In re SKAATS.

(District Court, S. D. Alabama, S. D.   July 27, 1914.)

No. 1231.

1. BANKRUPTCY ⊚⟳404(1)—DISCHARGE—APPLICATION.

The right to apply for a discharge in bankruptcy is personal to the bankrupt, and his failure or delay in applying therefor cannot affect the rights of third persons, other than in so far as he may fail to procure a discharge from subsequent liability on their claims.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 679, 681–691;  Dec. Dig. ⊚⟳404(1).]

2. BANKRUPTCY ⊚⟳404(2) — DISCHARGE — ADJUDICATION — CONCLUSIVENESS —"RES JUDICATA."

Under Bankr. Act July 1, 1898, c. 541, § 14b, 30 Stat. 550, as amended by Act June 25, 1910, c. 412, § 6, 36 Stat. 839 (Comp. St. 1913, § 9598), providing that a bankrupt shall be discharged unless he has been guilty of certain offenses against the bankruptcy law, or has in a voluntary proceeding in bankruptcy been granted a discharge within 6 years, the failure of a bankrupt in a previous voluntary bankruptcy proceeding to apply within the 12-month period during which application for a discharge can be made does not operate as a conclusive adjudication, precluding, on subsequent bankruptcy within six years, a discharge of such claims, where they are scheduled and filed and the second bankruptcy is not a colorable attempt to continue the first, for the right to apply for a discharge is one personal to the bankrupt, and unless there is an application and a denial the matter is not "res judicata," which is a thing adjudged or judicially acted upon and decided, but the right is only denied by operation of the statute.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 690;  Dec. Dig. ⊚⟳404(2).

For other definitions, see Words and Phrases, First and Second Series, Res Adjudicata.]

In Bankruptcy.   In the matter of the bankruptcy of Henry L. Skaats.   On application for discharge.   Discharge granted.

The report and findings of R. T. Ervin, referee in bankruptcy, on objections to discharge, are as follows:

The undersigned respectfully reports that, acting upon the reference to him in this cause, he did on Friday, July 17, 1914, hear the attorneys for the petitioner and the attorneys for the objecting creditor, and that he did thereafter investigate the question of whether or not the bankrupt in this case is debarred from the right to a discharge under the objections filed in this cause.

[1, 2] There are quite a number of cases holding that the failure to apply for a discharge within the 12 months named in the Bankruptcy Act constitutes a res adjudicata as to the right of the bankrupt in any subsequent bankruptcy proceedings filed by him.   A brief consideration of some of the authorities will suffice to show this proposition.

In re Elby (D. C.) 157 Fed. 935: In this case the court says: "The failure of the bankrupt to apply for a discharge in the first bankruptcy proceedings, and the approval of the record by the court of such proceedings without granting a discharge, constitutes a judgment by default in favor of the bankrupt's then existing creditors, and a conclusive judgment in their favor that the bankrupt was not entitled to a discharge from their claims, and that judgment is conclusive in favor of such creditors."

Kuntz v. Young, 131 Fed. 719, 65 C. C. A. 477:  A consideration of the

⊚⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

233 F.—52

case of Kuntz v. Young will show that the court there held that a bankrupt who has failed to apply for a discharge within 12 months after his adjudication cannot obtain the discharge from the same debts there scheduled in a proceeding commenced *while the first proceeding is still pending.*

An examination of the facts in the Kuntz Case shows, further, that in the first proceedings of Kuntz there were objections filed to his application for a discharge, and it was undoubtedly the case that the second proceedings were filed by Kuntz in a manifest effort to avoid the objections which had been filed in his first bankruptcy proceedings, and that his first proceedings were still pending when Kuntz filed his second bankruptcy proceedings. These facts being shown to the District Court, that court denied the application for a discharge and dismissed the second proceedings.

In the case of Kuntz v. Young the court cites, in favor of the proposition that "the denial of an application for a discharge from debts provable * * * under one petition in bankruptcy under the act of 1898 renders the issue of a right to a discharge from those debts in a proceeding under a subsequent petition res adjudicata; a failure to apply for a discharge within 12 months after adjudication in an earlier proceeding has the same effect: Gilbert v. Hebard, 8 Metc. (Mass.) 129; In re Drisco, Fed. Cas. No. 4,086; In re Herrman (D. C.) 102 Fed. 753."

An examination of the case of In re Herrman, supra, will show that the court merely held that an order refusing to discharge a bankrupt under the act of 1867 does not estop a bankrupt from applying for a discharge as to the same debt under the act of 1898. This has nothing to do with the question for which it is cited.

In the case of Gilbert v. Hebard, supra, the case arose under the insolvency statutes of Massachusetts and did not involve in any sense the question of the failure of the bankrupt to apply for his discharge and the effect of such failure. The only headnote of the case is a correct summary of the decision, and is as follows: "After proceedings have been had against an insolvent debtor, and his discharge has been refused on his appeal to the Supreme Judicial Court, under St. 1838, c. 163, §§ 7, 8, he is not entitled to the benefit of that statute, on a new petition, unless he owes debts to the amount of $200 which were not provable under the former proceedings. And if, on proof of his owing such debts to that amount, proceedings are had against him on a new petition, and he obtains a certificate of discharge, such certificate will not discharge him from any debts that were provable under the former proceedings, unless those to whom such debts were due, elect to prove them under the new proceedings, which, it seems, they may do."

Upon examination of the case of In re Drisco, supra, it appears, first, that this case arose under the provisions of the Bankruptcy Act of 1867 (Act March 2, 1867, c. 176, 14 Stat. 517). It appeared that Drisco had been declared bankrupt, had applied for his discharge, and objection had been filed by certain creditors because of certain frauds practiced by Drisco. All parties seem to have conceded that the discharge should not be granted, but as a matter of fact no formal order denying the discharge was made. Thereafter Drisco was sued by his creditors in the state court. He then applied for a second adjudication in bankruptcy, which was granted. The creditors moved to dismiss his second proceedings, and on the hearing Judge Lowell, on the request of Drisco, entered an order nunc pro tunc denying the discharge in the first bankruptcy proceedings, and he then denied the motion to dismiss the second bankruptcy proceedings taken by Drisco. He discusses the matter in his opinion, and refers to the insolvency act of Massachusetts, where it had been held that, if a bankrupt later on contracted new debts, he could take the benefit of the insolvency law a second time, and could get a discharge against the new debts, but not against the debts proved in the first bankruptcy proceeding; and in discussing these Massachusetts cases he says: "It was taken for granted that the decree of discharge could not operate upon debts which were proved or provable under the earlier Bankruptcy Acts, because as to these it was res adjudicata that the bankrupt was not entitled to it; and it was said that the discharge in the new proceedings must be limited to the new debts, unless the old creditors, or some of them, elected to come in and share in the new assets." He then discusses the

provisions of the federal act and says: "By section 5116 of the Revised Statutes it is enacted that no person, who has once been discharged and becomes bankrupt again, upon his own petition shall be entitled to a discharge, unless his estate is sufficient to pay seventy per cent. of the debts proved, or unless three-fourths of his creditors assent; but a bankrupt who proves that he had paid all his old debts, or has been voluntarily released from them, may have a discharge as if he had not before been bankrupt."

From a careful reading of the opinion in the Drisco Case it clearly appears, first, that it applied solely to the provisions of the former Bankruptcy Act, and that these provisions are entirely different from those of the act of 1898, and that the provisions as to granting or refusing a discharge are so entirely separate that it has no application to the present Bankruptcy Act. It further appears that the contention made in that case was, not that Drisco, not having gotten his discharge in the first proceedings, could not get a discharge in the second proceedings; but that he, not having gotten a discharge in the first proceedings, could not be a second time *declared a bankrupt*, an entirely different question from that assumed by the cases citing the Drisco Case. This clearly appears from the opinion of Judge Clifford on appeal from the ruling of Judge Lowell. This opinion will be found in 7 Fed. Cas. No. 4,086, being in the same volume, but printed a few pages in advance of the opinion of Judge Lowell. In Judge Clifford's opinion, it is said in stating the case: "Clifford, Circuit Justice. Sufficient appears to show that the petitioners are creditors of the alleged bankrupt; and they allege in their petition, filed in this court, that the bankrupt, on the 14th of March, 1872, filed a petition in bankruptcy in the District Court, and that he was adjudged to be a bankrupt; that he afterwards applied to the District Court for a discharge from his debt, under the Bankrupt Act; that the present petitioners filed objections to his discharge, alleging that he had committed certain frauds against the provisions of the Bankrupt Act, and that the charges of fraud were sustained by the District Court, and that the petition for discharge was thereupon suspended; that a suit between the petitioners and the bankrupt, then pending in the state court was by agreement prosecuted to judgment, to ascertain the amount due the petitioners from the bankrupt, they having proved no claim in the bankruptcy proceedings against his estate; that no order refusing the discharge of the bankrupt was made at the hearing, nor did the bankrupt then ask or require that such an order should be made; that the petitioners subsequently recovered judgment, in the suit pending in the state court, for $2,100 and costs of suit; that the bankrupt, on the 13th of July, 1875 (his former petition being still pending, and their claim being still unpaid), filed a second petition in bankruptcy, and was again adjudged a bankrupt by the District Court; that the petitioners, being notified of the second petition, filed a motion in the District Court to dismiss the same, *upon the ground that, the bankrupt having, under his first petition, been proved guilty of frauds under the Bankrupt Act, and not having been discharged under the same, he could not again avail himself of the benefits of the Bankrupt Act; and that the former petition, inasmuch as he was not discharged under it, is a bar to any subsequent proceedings under that act.*" (Italics mine.) The ruling of Judge Lowell is then affirmed.

I feel quite sure, after tracing this matter back to the Drisco Case, and seeing the question that was presented there, and what was there said by these two judges, and seeing that the Drisco Case arose under the former Bankruptcy Act, that the later cases have entirely misapplied what was there said, and have misconstrued it in applying it to the application for a discharge under the present Bankruptcy Act in a second bankruptcy proceeding, when no application for a discharge had been made by the bankrupt in the prior one. This is especially emphasized by the decision in Re Herrman, supra, where it was held that the refusal to grant a discharge under the act of 1867 is no reason why a discharge should not be granted under the act of 1898, even where the same creditors shown in the proceedings under the act of 1867 are objecting to the case made under the act of 1898.

It will be observed in the Drisco Case that no application had been made for a discharge in the second bankruptcy proceedings. The court never had

that question before it; never considered it nor passed on it. The only question was whether or not the second adjudication of bankruptcy was proper, where the bankrupt had either been denied his discharge or had not applied for it in the first proceedings.

The later cases of In re Weintraub (D. C.) 133 Fed. 1000; In re Kuffler, 151 Fed. 12, 80 C. C. A. 508; In re Bramlett (D. C.) 161 Fed. 588; In re Schnabel (D. C.) 166 Fed. 383; In re Von Borries (D. C.) 168 Fed. 718; In re Pullian (D. C.) 171 Fed. 595; In re Stone (D. C.) 172 Fed. 947—are all based on the case of Kuntz v. Young, supra.

There are a number of other cases that hold the same proposition, namely, that a failure to apply for a discharge within 12 months constitutes a res adjudicata against the bankrupt in any subsequent proceedings, when he seeks to get a discharge in such subsequent proceedings. I have examined all of these I could get my hands on, and I cannot see how they reached the conclusion named. Res adjudicata is a thing adjudged; a thing judicially acted upon and decided; a thing or matter settled by judgment; a thing definitely settled by judicial judgment; the thing adjudged. 34 Cyc. 1666.

How can a failure of the bankrupt to ask and obtain a judgment upon his right to a discharge be declared to be a judgment that he has no such right. Here the court has rendered no judgment denying him the right to a discharge. The question of the right to his discharge has never been under investigation by the court, or considered in any manner by it, and no judgment or conclusion has been reached by the court on this question. I do not understand how any question can be res adjudicata, unless it is involved in the decision and determined by the court. "The doctrine of res adjudicata, the estoppel by judgment, as it is sometimes less accurately termed, is a rule of law founded upon the soundest consideration of public policy. It means that if an action be brought, and the merits of the question be discussed between the parties, and a final judgment be obtained by either party, the parties are concluded, and cannot * * * canvass the same question in another action." Wisconsin v. Torinus, 28 Minn. 175, 9 N. W. 725, quoted in 34 Cyc. 1666, note 56. All the cases agree that if the bankrupt has applied for his discharge, and this application has been denied by the court in the first proceeding, this constitutes res adjudicata, and denies to the bankrupt the right to a discharge in the second proceeding. It seems to me that in the decisions which I have criticized the courts overlooked the express terms of the Bankruptcy Act. Section 14, subd. "b," of the act, as amended June 25, 1910, reads as follows: "The judge shall hear the application for a discharge and such proofs and pleas as may be made in opposition thereto by the trustee or other parties in interest, at such time as will give the trustee or parties in interest a reasonable opportunity to be fully heard, and investigate the merits of the application and discharge the [bankrupt] unless he has * * * (5) in voluntary proceedings been granted a discharge in bankruptcy within six years."

It seems to me that, under this language, it is not sufficient to show merely that the bankrupt had filed a voluntary proceeding within six years previous and had failed therein to apply for a discharge. It must be shown that not only was there a voluntary proceeding, but that there was a discharge granted or a discharge denied by the court. This view, it seems to me, is distinctly laid down by the Supreme Court in the case of Bluthenthal v. Jones, 208 U. S. 64, 28 Sup. Ct. 192, 52 L. Ed. 390. There the court, on appeal from the ruling of the Supreme Court of Florida, affirmed the Florida court in holding that, if a discharge be granted in a second bankruptcy proceeding, it is effective to bar all debts, even though the discharge had been denied in the previous proceedings. The Supreme Court says: "There is no reason shown in this record why the discharge did not have the effect which it purported to have. Undoubtedly, as in all other judicial proceedings, an adjudication refusing a discharge in bankruptcy finally determines, for all time and in all courts, as between those parties or privies to it, the facts upon which the refusal is based. But courts are not bound to search the records of other courts and give effect to their judgments. If there has been a conclusive adjudication of a subject in some other court, it is the duty of him who relies upon it to plead it, or in some manner bring it to the attention of the court

in which it is sought to be enforced. Plaintiffs in error failed to do this. When an application was made by the bankrupt in the District Court for the Southern District of Florida, the judge of that court was, by the terms of the statute, *bound to grant it, unless upon investigation it appeared that the bankrupt had committed one of the six offenses which are specified in section 14 of the Bankruptcy Act as amended.* (Italics mine.) An objecting creditor might have proved upon that application that the bankrupt had *committed one of the acts* which barred his discharge, either by the production of evidence or by showing that in a previous bankruptcy proceeding it had been *conclusively adjudicated*, as between him and the bankrupt, that the bankrupt had *committed one of such offenses.* If that adjudication had been proved, it would have taken the place of other evidence and have been final upon the parties to it."

In the case of In re Claff (D. C.) 111 Fed. 506, it is held that a bankrupt who has been refused a discharge is not debarred from filing a second petition and obtaining a discharge thereunder. In this case it is also suggested that this discharge will be no bar to the claims scheduled in the first adjudication and not proven in the second. The case of In re Pullian (D. C.) 171 Fed. 595, states: "It is now well settled in the later federal decisions, overruling in some respects the case of In re Claff (D. C.) 111 Fed. 506, and the cases therein cited, that where, in a bankruptcy proceeding, the bankrupt fails to apply for a discharge within the time limited by the Bankruptcy Act, this has the same effect as a judgment denying his discharge from the debts therein involved," etc. And this case goes further, and holds that where new debts are created the bankrupt has a right to a discharge as against these debts. This same ruling seems to be laid down in Re Kuffler, 151 Fed. 12, 80 C. C. A. 508.

In some of the cases it seems the courts discuss the question of granting a limited discharge releasing a debtor from debts contracted since the former adjudication, but denying a discharge as to the debts scheduled in the former adjudication. One of these cases is In re Von Borries (D. C.) 168 Fed. 718; another is In re Pullian (D. C.) 171 Fed. 595. I find no authority in the Bankruptcy Act to limit a discharge when granted, or to grant a limited discharge, releasing a debtor as to certain debts and denying him a release as to other debts, and I seriously doubt if any such discharge could be granted. It is certainly the case that a discharge granted in a second bankruptcy case does release the debtor from all of his debts, including those listed in a former adjudication, if they are again listed in a second adjudication, since the decision by the Supreme Court in the case of Bluthenthal v. Jones, 208 U. S. 64, 28 Sup. Ct. 192, 52 L. Ed. 390.

The question as to whether the bankrupt will apply for a discharge, or not apply, is determined by himself alone. The court has no part in this determination. After the application has been filed, the court, for the first time, is called on to consider the matter, and I cannot conceive how the decision of the bankrupt as to whether he will or not apply can be held to be res adjudicata against him. The bankrupt may have his own reasons which move him in the decision of this question, or it may be a matter which he has overlooked until the time has passed within which the application is, by section 14, required to be filed. This is a personal matter of the bankrupt until the petition for a discharge is filed, and neither the creditors nor the court are called upon to act until the application is filed. The creditors neither get anything nor are they deprived of anything by the failure of the bankrupt to file the application. The position taken by these courts seems to me to be a court-made addition of a seventh ground of opposition to the provisions of the Bankruptcy Act, viz., "or (7) failed to apply for a discharge in any former bankruptcy proceeding." The provisions of the Bankruptcy Act contemplate that a man may be more than once declared a bankrupt. These successive proceedings are entirely separate and distinct. It therefore seems to me that neither the bankrupt nor the creditors are bound in one proceeding by a mere failure to do something in the prior one, when no one has changed his position for the worse thereby, or been deprived of anything or any right thereby. I recognize that, where one has obtained an advantage

or has induced another to act to his prejudice in a suit by setting up a certain state of facts that he will not in another suit be permitted to prove, a different state of facts. Caldwell v. Smith, 77 Ala. 158; Lehman v. Clark, 85 Ala. 109, 4 South. 651. But I have seen no case that one is estopped by failure to ask for something personal to himself in a suit when no one is prejudiced by such failure.

The right of the bankrupt to a discharge is a personal one, and if he unwittingly or carelessly fail to file within the prescribed time his application, no one is hurt; no one is caused to change his position for the worse; no one relying on such failure has done or omitted to do anything he would or would not have done except for such failure. The court has neither considered nor had submitted to it for consideration or decision anything concerning the bankrupt's right to a discharge. Suppose a person be forced by circumstances into bankruptcy; he does not owe many debts, and he thinks he may be able later to pay them, and so fails to apply for a discharge, but his estate is administered and distributed among his creditors. He later goes into business, but is again unfortunate, and in the course of several years is again declared a bankrupt, having incurred other debts. He then files in the second proceeding his application for a discharge. Is this to be denied, and he be left indebted to both classes of his creditors, merely because he failed to apply for a discharge in his first proceeding? If this be so, the effect is to deny to an honest debtor a discharge without the commission by him of any one of the six grounds named in the Bankruptcy Act; in fact, without the commission by him of any wrongdoing.

It will be noticed that all the named grounds for refusing a discharge, except the fifth, are because of some wrongdoing by the bankrupt. The fifth is where he has been granted a previous discharge within six years. I submit that the courts should not, and have no right to, add any additional grounds to the statute. I again call the court's attention to the language of the Supreme Court in the Bluthenthal Case, supra, the only case I have found where it has considered this question. Speaking of the application of the bankrupt in the second proceeding, it says: "An objecting creditor might have proved upon that application that the bankrupt *had committed one of the acts which barred his discharge*, either by the production of evidence or by showing that in a previous bankruptcy proceeding it had been conclusively *adjudicated as between him and the bankrupt* that the bankrupt *had committed one of such offenses.*" (Italics mine.) Does not this decision hold that in the absence of the commission by the bankrupt of one of the named statutory offenses such bankrupt must be discharged? If so, what is said by other inferior courts is of no concern. Certainly the failure to apply for a discharge in a previous bankruptcy case is not an offense named in the act, nor is such failure an adjudication of such fact.

It seems to me that this language of the Supreme Court in construing this section of the Bankruptcy Act is conclusive, in that there must be shown an adjudication by the court in the first proceeding that the bankrupt was not entitled to his discharge, and, if this be not shown, that this court, under the terms of the Bankruptcy Act, should now grant the bankrupt a discharge. I now call attention to the fact that the objecting creditor does not show that the first proceeding instituted by the bankrupt is still pending, nor does he show that the other creditors named by the bankrupt in the second proceeding were also shown by the schedules in the first proceeding. He merely contents himself by stating that his name was shown on the schedules in the first proceeding. Undoubtedly the rule laid down by the various courts that the failure to apply for a discharge in the first proceeding would bar the application in the second proceeding was founded upon the idea that the second proceeding was a mere dodge, and not a bona fide proceeding. An examination of these cases will show that in most of them there were facts and circumstances brought to the court's attention tending to show that the second proceedings were not taken in good faith. It is not surprising that under these circumstances the courts, for their own protection, will take advantage of their opportunity to prevent one from taking undue advantage of the courts.

In this case, under the objections of this creditor and the facts as they appear before me, I recommend that your honor grant the bankrupt a discharge.

TOULMIN, District Judge. It appearing to the court that on June 6, 1914, the bankrupt filed petition for a discharge, and that the same was duly set for hearing on July 10, 1914, that on July 9, 1914, the Georgia Loan Company, a creditor, filed objections to the granting of a discharge, which objections involved a question of law solely, and that on July 10, 1914, said objections were referred to R. T. Ervin, referee in bankruptcy, with directions to hear the same and report thereon to the court his findings and conclusions of law, that on July 27, 1914, said referee filed his findings and conclusions of law and recommended that the bankrupt be granted a discharge, and said findings, conclusions of law, and recommendation being duly considered by the court, it is ordered and decreed by the court that said findings and conclusions of law are hereby concurred in, and that the bankrupt be and he is hereby granted a discharge.

